**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-40156

SHARRON STEWART; HOUSTON AUDUBON SOCIETY; SIERRA CLUB,

Plaintiffs-Appellants,

VERSUS

COL. NICHOLAS J. BUECHLER, ETC., ET AL,

Defendants,

COL. NICHOLAS J. BUECHLER, District Engineer; UNITED STATES CORPS OF ENGINEERS; GREGORY R. DAHLBERG, Acting Secretary, Department of the Army,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas, Galveston
(G-96-CV-282)

March 20, 2002

Before DUHÉ, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

This appeal inquires into the sufficiency of the United States Army Corps of Engineers' analysis of cumulative environmental impacts of a proposed golf course in Lake Jackson, Texas. In an earlier summary judgment, the district court remanded the case to the Corps after reviewing the administrative record, and directed

---

[1] Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

the Corps to analyze the cumulative and indirect impacts of fragmentation of the forest. After the Corps reissued the permit on remand, plaintiffs re-challenged its cumulative-impact analysis in court. The district court on summary judgment found the Corps had complied with NEPA,[2] and plaintiffs appeal. Specifically at issue is whether the Corps adequately completed steps four and five of the cumulative-impacts analysis enumerated in Fritiofson[3] after the district court's remand. For the following reasons, we affirm.

I.

We review the district court's summary judgment decision de novo, applying the same standard of review of the Corps' action as the district court. Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 679 (5th Cir.), cert. denied, 506 U.S. 823 (1992). We review the materials under a highly deferential

---

[2]The National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq.

[3]Fritiofson v. Alexander, 772 F.2d 1225 (5th Cir. 1985), articulates five mandatory considerations in "a meaningful cumulative-effects study": 1) the area in which effects of the proposed project will be felt; 2) the impacts expected in that area from the project; (3) other actions--past, proposed, and reasonably foreseeable--that have had or are expected to have impacts in the area; (4) the impacts or expected impacts from these other actions; and (5) the overall impact expected if the individual impacts accumulate. Id. at 1245. Fritiofson notes that regulations "clearly mandate consideration of the impacts from actions that are not yet proposals and from actions--past, present, or future--that are not themselves subject to the requirements of NEPA." Id. at 1243. As explained in Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 677 (5th Cir.), cert. denied, 506 U.S. 823 (1992), although this Court has abandoned the "reasonableness" standard of review employed in Fritiofson, its holdings regarding the Corps' duties in a cumulative-impact analysis remain in effect.

2

standard, to determine only whether the agency's conclusions were "arbitrary and capricious." Id. at 678, 679; 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 376 (1989).

II.

The summary judgment evidence establishes that the Corps gathered data to supplement the Environmental Assessment (EA) to address the concerns raised in the remand order. The Corps engaged a consulting firm which provided an extensive supplemental study of direct, indirect, and cumulative impacts. The assessment considered the historical extent and decline of woodlands in a four-county area, fragmentation of the forest in that area, forested acreage protected from further development such as Wilderness Park and land donated by DOW Chemical, and the importance of diverse forested areas near the Gulf Coast to neotropical bird migration. See 2 Supp. Admin. R. 869-916. The assessment further took into account a 1995 Gulf Coast Observatory's Project Report, created as part of a joint conservation effort, classifying and evaluating bottomland habitats in the affected area since establishment of the base line in 1979, as well as the fact that deforestation occurred before 1979. It reviewed information about bird migration and habits along the entire Gulf Coast, including doppler radar images, and considered all species using the Columbia bottomlands generally (as well as specifically the proposed site).

After a preliminary Finding of No Significant Impact (FONSI)

3

based on the supplemental assessment after remand, the Corps (Galveston District) asked an independent Corps biologist, Wayne Lea (Fort Worth District), to reevaluate its findings anew. Lea opined that the golf course would continue to provide usable habitat for bird migrations, found thousands of acres of forest remaining, and agreed with the FONSI. Id. at 1012, 1032-37.

The Corps finally determined,

> Cumulatively, this project does not represent a significant loss of the existing bottomland forest resource, particularly in light of the preservation of almost half of this particular tract and the on-going attempt to preserve 70,000 acres of this forest. It does not represent a significant fragmentation of the existing bottomland hardwood resources, nor is it significant when added to past losses.

Id. at 1042. Accordingly, the Corps reaffirmed its earlier decision to issue the permit in another FONSI and a finding that preparation of an Environmental Impact Statement was not warranted.

### III.

After de novo review of the administrative record, we hold the Corps adequately considered the evidence relative to steps four and five of the Fritiofson test. On this record, we cannot say that the Corps' analysis or decision making was arbitrary or capricious.

The judgment of the district court is in all respects

AFFIRMED.

4